**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MAINE**

| | |
|---|---|
| FRANKLIN MEMORIAL HOSPITAL, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRENDA M. HARVEY, in her official )<br>Capacity as Commissioner of the Maine )<br>Department of Health and Human Services )<br>)<br>Defendant. )<br>) | Docket No. 07-cv-125-GZS |

**ORDER ON MOTION TO DISMISS**

Before the Court is a Motion to Dismiss filed by Defendant Brenda M. Harvey, in her official capacity as the Commissioner of the Maine Department of Health and Human Services ("DHHS"). (Docket # 7.) Defendant moves under Federal Rule of Civil Procedure 12(b)(6) to Dismiss Count II of Plaintiff's Complaint. For the reasons stated below, the Court GRANTS the Motion.

**I.    LEGAL STANDARD**

Pursuant to Rule 12(b)(6), a party is entitled to have a claim against it dismissed when the allegations on which the claim depends "fail[] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion under Rule 12(b)(6), the Court must accept as true the well-pleaded factual allegations of the complaint, draw all reasonable inferences in the plaintiff's favor, and determine whether the complaint, when taken in the light most favorable to the plaintiff, sets forth sufficient facts to support the claim for relief. Clorox Co. v. Proctor & Gamble Commercial Co., 228 F.3d 24, 30 (1st Cir. 2000); LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st

1

Cir. 1998). Pursuant to Rule 8(a), the pleader need only make "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Despite the liberal pleading standard of Rule 8, to survive a motion to dismiss, a complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1967 (2007).

## II.   BACKGROUND

Franklin Memorial Hospital ("FMH") is a Maine non-profit corporation that operates an acute care hospital in Farmington, Maine. At all times relevant to this case, FMH has been a participant in Maine's Medicaid Program, "MaineCare."[1] The reimbursement that FMH receives for providing services to MaineCare participants is lower than and does not fully compensate FMH for its actual reasonable costs of treating MaineCare participants. On average, FMH's historical actual cost per discharge is approximately $4,796. For fiscal year 2007, however, FMH will be reimbursed approximately $2,646.95 per discharge for inpatient hospital treatment services provided under MaineCare. In addition, FMH is subject to Maine's free care statute, 22 M.R.S.A. § 1715, et seq., and therefore must provide certain medical services to qualified individuals without cost.

On August 21, 2007, FMH filed a two count complaint naming Brenda Harvey, the Commissioner of the Maine Department of Health and Human Services, as Defendant. The Complaint asserts causes of action for unlawful taking under Maine's free care statute (Count I) and the MaineCare program (Count II). On October 22, 2007, Defendant moved

---

[1]  Plaintiff asserts in the Complaint that participation in MaineCare is not voluntary. Although the Court acknowledges this assertion from the Complaint, it need not and does not accept it. See Ruiz v. Bally Total Fitness Holding Corp., 496 F.3d 1, 4 (1st Cir. 2007) (providing that a court need not accept "bald assertions, unsupportable conclusions, and opprobrious epithets" (citations omitted)).

to dismiss Count II of Plaintiff's Complaint (Docket # 7); thereby challenging Plaintiff's assertion that MaineCare creates an unlawful taking.

### III.    DISCUSSION

In order to discuss Plaintiff's Takings Claim, the Court first must describe some basic aspects of Maine's Medicaid program, MaineCare, and Maine's free care statute.

### A.    MaineCare, Maine's Medicaid Program

Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, established the federal Medicaid Act to "assist the poor, elderly, and disabled in obtaining medical care." Long Term Care Pharmacy Alliance v. Ferguson, 362 F.3d 50, 51 (1st Cir. 2004). "Under the Medicaid Act . . . the federal government provides financial support to states that establish and administer state Medicaid programs in accordance with federal law through a state plan approved by the U.S. Department of Health and Human Services." Id. (internal citations omitted). Under the Medicaid Act, states must provide for payments to health care providers that "are sufficient to enlist enough providers so that care and services are available under the plan . . . ." 42 U.S.C. § 1396a(a)(30)(A). Maine participates in Medicaid, and its plan, "MaineCare," is administered by the Maine Department of Health and Human Services. MaineCare policies and procedures, including provider participation, are detailed in chapter 101 of the Code of Maine Rules. See 10-144 Code of Maine Rules, ch. 101, et seq.; see also id. § 1.03 (stating that "[p]roviders must complete and return the provider enrollment form and a Provider/Supplier Agreement in order to enroll as a MaineCare provider").

B.   **Maine's Free Care Statute, 22 M.R.S.A. § 1715 et seq.**

In addition to MaineCare, Maine has enacted a statutory and regulatory scheme that mandates that certain hospitals provide health care services "to individuals who are eligible for charity care in accordance with a charity care policy . . . that is consistent with rules applicable to hospitals under section 1716." 22 M.R.S.A. § 1715. Section 1716 provides that "[DHHS] shall adopt reasonable guidelines for policies to be adopted and implemented by hospitals with respect to the provision of health care services to patients who are determined unable to pay for the services received." Id. § 1716.

As directed by the statute, DHHS has adopted guidelines implementing free care ("the guidelines") in the Code of Maine Rules. 10-144 Code of Maine Rules, ch. 150, § 1.01 et seq. Section 1.03 of the guidelines states that: "Hospitals shall provide free care for medically necessary inpatient and outpatient hospital services." Id. § 1.03. Under the guidelines, a person is eligible for free care if his or her income is not greater than 150% of the federal poverty level. Id. § 1.02(C). Section 1.05(B) further delineates the eligibility requirements for free care:

(1) Upon receipt of an application, a hospital shall determine that an individual seeking free care qualifies for such care if:
    a. The individual meets the income guidelines specified in Section 1.02;
    b. The individual is not covered by any insurance nor eligible for coverage by state or federal programs of medical assistance; and
    c. Services received were medically necessary.

(2) If the hospital determines that the individual seeking free care meets the income guidelines but is covered by insurance or by state or federal programs of medical assistance, it shall determine that any amount remaining due after payment by the insurer or medical assistance program will be considered free care.

Id. § 1.05(B). In addition, section 1.06(B) states: "If an individual has been determined qualified for free care under 1.05(B)(2), the individual shall not be billed for any amount

4

not paid by an insurer or medical assistance program." Id. § 1.06(B). Count II of Plaintiff's Complaint asserts that the MaineCare program, together with the free care statute and implementing guidelines, enacts a taking without just compensation in violation of the Fifth Amendment to the United States Constitution and Article I, Section 21 of the Maine Constitution.

**C.    The Takings Clause**

The Takings Clause of the Fifth Amendment provides, in pertinent part, ". . . nor shall private property be taken for public use, without just compensation." U.S. Const. amend. V. The Clause was "designed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." Armstrong v. United States, 364 U.S. 40, 49 (1960). Article I, Section 21 of the Maine Constitution states: "Private property shall not be taken for public uses without just compensation; nor unless the public exigencies require it." Me. Const. Art. I, § 21. Maine courts have interpreted the Takings Clauses of both the United States and the Maine constitutions similarly, and thus the Court will rely on the well developed body of federal law in analyzing the present Motion. See Bell v. Wells, 557 A.2d 168, 177-78 (Me. 1989); Seven Islands Land Co. v. Maine Land Use Regulation Comm'n, 450 A.2d 475, 482 (Me. 1982) ("Both the United States and the Maine Constitutions prohibit the government from taking private property for public purposes without just compensation.").

Takings Clause jurisprudence has developed along two lines: one addressing regulatory takings and the other addressing physical takings. "A regulatory taking transpires when some significant restriction is placed upon an owner's use of his property for which 'justice and fairness' require that compensation be given." Pharm. Care Mgmt.

5

Ass'n v. Rowe, 429 F.3d 294, 306 (1st Cir. 2005) (citations omitted). Plaintiff's principal claim is that MaineCare, in combination with the statutory and guideline framework for free care, enacts a regulatory taking.[2]

In order for regulations to give rise to a taking, "[a] property owner must be legally compelled to engage in price-regulated activity . . . . By contrast, where a service provider voluntarily participates in a price-regulated program or activity, there is no legal compulsion to provide service and thus there can be no taking." Garelick v. Sullivan, 987 F.2d 913, 916 (2d Cir. 1993) (internal citations and quotations omitted); see also Philip Morris v. Harshbarger, 159 F.3d 670, 679 (1st Cir. 1998) (noting that a party was legally compelled to participate in a regulatory scheme where the state statute "force[d] a party to make a Hobson's choice: either submit ingredient lists containing valuable trade secrets without adequate safeguards or cease doing business in an important market"); Burditt v. U.S. Dep't of Health & Human Servs., 934 F.2d 1362, 1376 (5th Cir. 1991); Minnesota Ass'n of Health Care Facilities, Inc. v. Minnesota Dep't of Public Welfare, 742 F.2d 442, 446 (8th Cir. 1984) ("Despite the strong financial inducement to participate in Medicaid, a nursing home's decision to do so is nonetheless voluntary. This voluntariness forecloses the possibility that the statute could result in an imposed taking of private property which

---

[2] Plaintiff also suggests that MaineCare enacts a physical taking by "compelling Plaintiff to provide [goods and services] for free or below actual costs to DHHS clients for which DHHS is obligated to make payment, and therefore has converted Plaintiff's property to its own governmental use." (Pl.'s Opp. to Def.'s Mot. to Dismiss Count II with Incorporated Mem. of Law (Docket # 12) at 8-9.) Plaintiff does not attempt to substantiate any further the claim of a physical taking. Nor does Plaintiff wade into the unclear waters of the Supreme Court opinions detailing when government mandated public access to private land enacts a physical taking. See Kaiser Aetna v. United States, 444 U.S. 164 (1979); PruneYard Shopping Center v. Robins, 447 U.S. 507 (1976). Nonetheless, just as voluntary participation in a regulated program cannot enact a regulatory taking, neither can voluntarily opening one's private space to public access via MaineCare enact a physical taking. See F.C.C. v. Florida Power Corp., 480 U.S. 245, 253 (1987) ("the element of required acquiescence is at the heart of the concept of occupation"); Norman v. United States, 429 F.3d 1081, 1090 (Fed. Cir. 2005). Because the Court finds that participation in MaineCare is voluntary, it declines to wade into the murky waters of physical takings in this case.

6

would give rise to the constitutional right of just compensation"). Plaintiff argues that while MaineCare is voluntary on its face, the MaineCare statute and implementing guidelines for free care legally compel Plaintiff to participate in MaineCare because it must either participate in MaineCare and receive unjustly low compensation or opt out of MaineCare and provide free care without cost to MaineCare participants.

**D.     Statutory Interpretation**

In this case, Plaintiff's claim that MaineCare amounts to a regulatory taking turns on the determination of whether participation in MaineCare is voluntary or legally compelled. Plaintiff argues that the free care statute and associated regulations legally compel participation in MaineCare. Specifically, Plaintiff interprets the free care statute and implementing guidelines to mean that a hospital that does not participate in MaineCare must consider all services provided to MaineCare participants who meet the income threshold as free care because the hospital would receive no compensation from the medical assistance program and may not bill the patient for the services rendered. As a result, the hospital would receive no compensation for any services provided to a MaineCare participant who meets the income guidelines. In short, Plaintiff views its Hobson's choice as MaineCare or free care.

Defendant urges that Plaintiff's interpretation of the guidelines is not correct. Instead, Defendant argues that under a proper reading of the guidelines, an individual is not eligible for free care if he or she has any insurance or is eligible for a medical assistance program. Furthermore, Defendant asserts, sections 1.05(B)(2) and 1.06(B) were written to address the situation where an individual meets the income threshold, is covered by

7

insurance or a medical assistance program, but the insurance or medical assistance program does not fully cover the incurred charges.

The statutes and guidelines at issue in this case are susceptible to differing constructions. In determining which construction controls, the Court gives substantial deference to DHHS, which is charged with adopting and implementing the relevant guidlines. See e.g., Pharm. Research & Mfrs. of Am. v. Meadows, 304 F.3d 1197, 1208 (11th Cir. 2002) (providing that "[a]s the state agency that administers the state Medicaid plan, and because its construction is reasonable, we believe that the [Agency for Health Care Administration]'s interpretation of the Florida law is entitled to substantial deference"); Enter. Leasing Co. v. Metro. Airports Comm'n, 250 F.3d 1215, 1223 (8th Cir. 2001) ("substantial deference is afforded to a state agency's interpretation of a statute the agency administers"); Wilcox v. Ives, 864 F.2d 915, 924 (1st Cir. 1988). Section 1716 specifically charges DHHS with adopting guidelines to implement free care, 22 M.R.S.A. § 1716, giving DHHS specialized knowledge and experience regarding the guidelines before the Court. The Court is also mindful that any deference given to DHHS must proceed in light of "the language, purpose and history of the statute" and guidelines. See Wilcox, 864 F.2d at 924.

Here, DHHS construes the implementing guidelines to exclude individuals from eligibility for free care who are covered by any insurance or eligible for state or federal programs of medical assistance, including MaineCare. Indeed, the guidelines specifically state that in order to be eligible for free care, the individual cannot be "covered by any insurance or eligible for coverage by state or federal program of medical assistance." 10-144 Code of Maine Rules, ch. 150, § 1.05(B)(1)(b).

Under this DHHS interpretation, if a MaineCare participant or a person eligible for MaineCare requested free care from a hospital that did not participate in MaineCare, that hospital would have no legal obligation to provide that care to the extent that the services sought were covered by MaineCare. "Rather, in such a situation, the hospital may recommend that the [participant] obtain services from a hospital that does participate in [MaineCare]. If the [participant] insists on receiving services from the non-participating hospital, the hospital may bill the [participant] for those services." (Def.'s Rep. in Supp. of Her Mot. to Dismiss Count II of Pl.'s Comp. (Docket # 13) at 1-2.)

DHHS points to other sections of the guidelines to bolster its interpretation. Specifically, section 1.04 requires that hospitals post notices of the availability of free care. The notice must state: "You will be asked if you have insurance of any kind to help pay for your care. You may also be asked to show that insurance or a government program will not pay for your care." 10-144 Code of Maine Rules, ch. 150, § 1.04(C)(1). In addition, a hospital may defer determining whether an individual is eligible for free care "for the purpose of requiring the applicant to obtain the present evidence of ineligibility for medical assistance programs . . . ." Id. § 1.05(C)(1). A hospital may also defer the decision regarding free care where it "has a reasonable basis for believing that the individual may be covered by insurance or eligible for federal or state medical assistance programs, . . . ." Id. § 1.05(C)(3).

The Court finds Defendant's interpretation of the statute and implementing guidelines reasonable.[3] The interpretation advanced by Defendant provides a cohesive

---

[3] The Court is not troubled by the advancement of this interpretation in the course of litigation. "The mere fact that an agency offers its interpretation in the course of litigation does not automatically preclude deference to the agency." Nat'l Wildlife Fed'n v. Browner, 127 F.3d 1126, 1129 (D.C. Cir. 1997). While an interpretation advanced during litigation carries the danger that the interpretation "may have been developed

9

meaning to the entire statute and implementing guidelines, and the Court has no reason to doubt that that the position is anything less than the result of Defendant's experience and knowledge.  Furthermore, the Court notes that Defendant and DHHS have not had the opportunity, before this litigation, to consider or address the issue because, according to Defendant, "no hospital in Maine has ever decided to terminate its participation in the Medicaid or Medicare programs."  (Def.'s Rep. in Supp. of Her Mot. to Dismiss Count II of Pl.'s Comp. at 4.)  Although Plaintiff advances a colorable reading of the statute and implementing guidelines, Defendant's interpretation is reasonable in light of the structure and purpose of the free care and MaineCare regulations when considered in their entirety.

Finally, the Court notes that Defendant's interpretation allows the Court to heed the doctrine of constitutional avoidance.  In this case, complex and murky questions of constitutional law lie beneath the surface.  "When . . . an intractable constitutional question looms, courts ought to approach that question with great reticence. The lack of any obvious answer to such a question suggests that, if a particular case can be disposed of on some narrower, less contentious ground, a court should avoid making a constitutional judgment." Hudson Sav. Bank v. Austin, 479 F.3d 102, 106 (1st Cir. 2007); see also United States v. Dwinells, 508 F.3d 63, 70 (1st Cir. 2007) ("the doctrine of constitutional avoidance does not come into play unless alternative constructions of a statute are fairly possible").  By finding that FMH would not be required to provide free care to those who have or are eligible for MaineCare and that as a result, FMH is not faced with a Hobson's choice, the Court can sidestep the complicated Takings Clause analysis that would necessarily follow

---

hastily, or under special pressure, and is not the result of the agency's deliberative process," id. (internal quotations and citation omitted), the Court has no reason to suspect that that is the case here.

an alternative interpretation. Thus, by affording substantial deference to Defendant's interpretation, the Court avoids intricate questions of constitutional law.

In short, Defendant's reasonable interpretation of the statute and implementing guidelines controls. Under this interpretation, an individual is not eligible for free care if he or she has insurance or is eligible for a medical assistance program, such as MaineCare. Thus, with respect to MaineCare patients, or those who are eligible, a hospital must choose between treating them and accepting MaineCare's low reimbursement for that care, or opting out of MaineCare and referring the MaineCare patient to a participating hospital. If the MaineCare patient insisted on receiving care from the non-participating hospital, the hospital may bill the MaineCare patient for those services. Given this choice, the Court finds that FMH is not legally compelled to participate in MaineCare but voluntarily participates in Maine's Medicaid program and elects to receive the reimbursement. Because there can be no taking in the absence of legal compulsion, Plaintiff has failed to state a claim upon which relief can be granted in Count II. Garelick, 987 F.2d at 916.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's Motion to Dismiss (Docket # 7) and **DISMISSES** Count II.

**SO ORDERED.**

/s/ George Z. Singal
Chief United States District Judge

Dated at Portland, Maine, this 28th day of January, 2008.